Before you, you have the 1st District, 2nd Division Appellate Court, which is basically Cynthia Cobb, Aurelia Puchinski, and myself, Justice Smith. This is 1-17-2097, Minguel Martinez, and the following is our basic procedure. We'll let the appellant present their case. We don't interfere. We give you the 10, 12, 14 minutes. Then after you've presented your case, we ask questions, then the appellee will have their chance to present theirs, and again, we'll ask questions after, and then the appellant. So if you're ready to roll, we're ready to roll. So go ahead. All right. Thank you, Your Honors. May it please the Court. My name is Kieran Weiberg. I'm from the Office of the State Appellate Defender, and I am here on behalf of Mr. Miguel Martinez. Now, as Your Honors are aware, we have raised several issues in this case that are somewhat interwoven, and there is a fair bit of complexity here, so I don't imagine that in the time we have, we'll be able to talk about everything in detail. Keeping that in mind, Your Honors, I would ask just should I happen to pass over something or gloss past something that one of Your Honors believes is significant to your decision, please by all means interrupt me and let me know so that I can be sure to cover all of the most important ground here. Before I get into the direct substance of the issues in question here, I do have to take just a moment to address the subject of forfeiture and waiver. The errors at issue in this case have been forfeited. We've acknowledged that. They were not objected to. We have raised them under the plain error rule, specifically the second prong of plain error. As Your Honors are aware, the State has argued that, in addition, every single one of these errors is waived. To that point, we believe we've more or less responded to this in our reply briefs. I would just note that forfeiture occurs when you fail to object. Waiver requires the intentional relinquishment of a known right, and that did not occur in this case. In fact, in almost every instance, the only thing that the State argues occurred is that you failed to object. Moving on to the substance of the issues in question, a lot of the problems in this case really began with the way that the Circuit Court responded to the State's motion to have the complaining witness in this case testify by a closed circuit television. Now, this is a legally useful and appropriate mechanism and a thing to do. We want child witnesses to be able to testify without fear or embarrassment. In fact, the legislature has provided a clear statutory guideline on how to do these kinds of proceedings, but unfortunately, in this case, the Circuit Court did not follow that statutory guidance. In fact, the Circuit Court did the exact opposite. The statute calls to have the witness at issue, along with the attorneys, the judge, the court reporter, located in a separate room where questioning can take place, and then that can be broadcast via closed circuit television into the courtroom where the defendant and the public can observe what's going on. Now, in this case, what the court did was it actually did the opposite. It had Mr. Martinez taken into another room while it held proceedings in the courtroom and had Martinez watch those proceedings from this other room. Now, at first, that may seem like a very small and probably inconsequential difference. However, as we see in this case, as matters develop, it actually leads to a great many problems, which could have been avoided simply following the statute, and those problems began with the opening statements. In this case, the court decided it wanted to test this closed circuit system, would make sure that it works, which seems appropriate. However, it decided to test this system by sending Mr. Martinez out of the courtroom for a portion of his own trial, sending him out during his own opening statements. And having him watch those in another room so that he could then confirm whether or not the closed circuit system was working appropriately. There are a couple of problems with this procedure, chief among them being that it was entirely unnecessary. It's relatively obvious that the court could have, and we believe should have, simply tested the system before the trial began. There was no reason why this had to occur as a part of Mr. Martinez's trial in this case. It was also problematic, of course, because as it turns out, the closed circuit system was not working ideally. Mr. Martinez could not hear what was being said, as was confirmed by a sheriff's deputy that was in the back room there with him. Meaning that not only was he not physically present for his opening statements, he was not able to hear. And so he was, for all intents and purposes, excluded from a portion of his own criminal trial for really no reason. And that is problematic, but the matters become more troubling as we move into the testimony of the complaining witness. Now, as noted, Mr. Martinez was located in another room. Now, the Constitution has a preference for face-to-face confrontation, but there are procedures that can be followed that can create an acceptable substitute. And the legislature has laid out what we need to do in order to accomplish that in a case like this. However, one of the key requirements in order for a substitute like this to be adequate as a substitute for face-to-face confrontation is that the defendant needs to be able to communicate with his attorney, and he needs to be able to communicate confidentially. And in this case, Your Honors, that was impossible. That was impossible because Mr. Martinez was only given one method by which to communicate with his attorney, and that was an intercom phone. However, we know from the proceedings that had just occurred prior to this that there was a sheriff's deputy in the room with him standing within earshot of anything that Mr. Martinez would say. The sheriff's deputy was reporting that he was able to hear everything that was being said over the closed circuit system. If he can hear what's being said over the closed circuit system, he can plainly hear anything that Mr. Martinez is speaking into an intercom. What that means is that Mr. Martinez, during the testimony of the complaining witness, and so this is arguably the most important evidence in this case, during the testimony of the complaining witness, who was also his daughter, Mr. Martinez had no ability to communicate confidentially with his attorney. Anything he wanted to say to his attorney, he had to say in the presence of law enforcement. And that is obviously not the confidential communication to which a defendant is normally entitled when communicating with their lawyer. And Your Honors, this is not a circumstance where we would think that there's relatively little chance that Mr. Martinez would have anything he could contribute during this examination. As the Supreme Court itself noted, and people do often, where you have an intrafamiliar incident like this, where you have allegations of things that occurred within a family, where you have a witness who's closely related to the defendant, these are exactly the situations where we would expect the defendant may have important information, important knowledge that they can raise with their counsel during the examination to help their counsel prepare for a proper cross-examination and to really do the best job that they can do. And unfortunately, in this case, Mr. Martinez simply was not able to assist in his defense in that fashion because of the procedure that was followed. Now, this also, this procedure also led to a second problem, which was the exclusion of members of the public. Now, had the statute been followed in this case, the complaining witness, the judge, and everyone else would have been in a separate room. The public would have been in the courtroom, and the public would have been able to view the proceedings, and there would have been no problem. However, that's not what happened in this case. Because the court decided to hold proceedings in the courtroom with Mr. Martinez out of the room, the court then had to address the question of whether any members of the public should be excluded during the complaining witness's testimony, which is, once again, where necessary and appropriate, a reasonable thing for the court to do. We want child witnesses to be able to testify. Here, it was not necessary, of course, because here, of course, the court could have simply followed the statute, and Mr. Martinez could have been in the courtroom, and the public could have been in the courtroom viewing all of this. But more importantly, what happened here is that the circuit court, in removing, as far as the record shows, two people were removed. A third person was allowed to stay, and it's not clear who those people are exactly. There is a reference to mom's family, but as we know, at this point, the complaining witness was actually living with a foster family, so it's not 100% clear who mom's family was. But before excluding these people from the courtroom, the court asked no questions. The court performed no investigation. And the court made no attempt to determine who these people were. The record shows us absolutely nothing as to whether these people had some connection with the media, whether these people have a direct interest in the case here, and that is what the statute requires. You cannot remove someone from the courtroom if they have a direct interest, and as the Fourth District held in People v. Schoonover, simply failing to perform that basic inquiry is itself error. However, here, the further we look at it, and when we consider the kinds of things that can justify a partial courtroom closure, we see that none of those requirements, none of those requirements, was this necessary? Was there a compelling reason why this had to happen? No, because the court could have simply followed the statute, and this would not have been an issue. Did the court consider viable other alternatives? Again, the answer is no, because there was a readily available other alternative that the legislature literally wrote down and provided as a matter of law, and the court chose not to follow for whatever reason. So this was an unnecessary closure, and it was an unjustified closure. And therefore, at this point, we believe that Mr. Martinez has already been denied both his right to be present for his trial and his right to have a public trial. However, the complaining witness did still have one more piece of evidence to give, and this was another very important piece of evidence in this case, and that was the victim-sensitive interview, and there is a video recording of the victim-sensitive interview in this case. Now, for all intents and purposes, Your Honors, this is testimony. We have a witness who is being asked questions about the alleged offense and answering those questions, and every single bit of it was admissible as substantive evidence to go to Mr. Martinez's guilt. So this is very important, very significant evidence. However, when the Finder of Fact was receiving this evidence, Mr. Martinez was not present. Mr. Martinez's attorney was not present. No members of the public were present. In fact, this video exhibit was never published in the courtroom. Instead, the circuit court chose to view this exhibit outside on its own in chambers without either Mr. Martinez having an opportunity to be present or the public having an opportunity to be present. Now, we have argued that this creates a problem for two different reasons, implicating both Mr. Martinez's right to be present for all critical stages of his own trial and his right to have a public trial. Now, first and foremost, as far as Mr. Martinez's right to be present, Mr. Martinez, as a criminal defendant, has a right to assist in his own defense, and he also has certain decisions he has to make. And as your honors are aware, we have cited to, for example, People v. Lucas, which talks about the importance of the defendant's need to decide whether or not they are going to testify. Now, without question, the most important factor in any defendant determining whether or not they need to testify is how the trial is going. Is the trier of fact convinced? Is this trier of fact ready to convict me, or are they not? Because as your honors are aware, testifying in a criminal trial is a dangerous matter for a defendant. Cross-examination is very difficult to withstand, and even people who are perfectly innocent can walk out of a cross-examination looking very bad. So a defendant who has been watching the finder of fact, who has been observing the trial and who believes that they are not convinced, that they do not appear to be believing the evidence that they are seeing, there are a lot of things you can look for. Are they taking notes? When are they taking notes? Are they showing any emotional reaction to the things that they're seeing? Are they watching carefully focused? Are they looking away somewhat distracted? These are all things that a defendant can, whether it be a judge or a jury, and in this case it was a judge, that a defendant can be watching for to try to make that important decision of, do I think this finder of fact is convinced by the evidence the state is showing? If they think not, then they are probably going to decide not to testify because it is not worth taking the risk of getting on the stand and being damaged by cross-examination. However, if you are convinced that the trier of fact is finding the evidence against you compelling, that they are finding it believable, well then at that point you absolutely are going to have to get up and testify on the stand because you have only one chance, and that is to convince the court to see things in a different fashion. Mr. Martinez, however, was unable to do this in part because when some of the most important evidence was coming in, it was happening outside of his presence. He can't see the finder of fact. He has no idea how they are responding to this evidence. But second, your honors, Mr. Martinez also has that right to a public trial, and the right to a public trial includes, among other things, a check of fairness. It is the fact that the public is there, that they are observing the fact finder and they are observing the evidence, and this is an important part of our justice system. We don't hold secret trials and we don't convict people based on secret evidence. And in this case, some of the most significant evidence in this case, either part of or all of the public, was excluded from. And your honors, that means that not only does Mr. Martinez lack the means to assure himself of the fairness of this trial, not having been present for all portions of it, but he lacks that secondary guarantee that comes from having a public trial and the public's to view the proceedings that are going on and to reach its own conclusions about the fairness of those proceedings. Now, as your honors are aware, as I mentioned earlier, these issues were forfeited. We have raised them as plain error. However, pursuant to the authority we've raised in our briefs, both of these issues, where you are considering both a defendant's right to be present and you are considering their right to a public trial, both of these are reviewable under the second prong of plain error, because regardless of the strength of the evidence, the fairness of the trial itself has been compromised. The process has been compromised. And under those circumstances, we presume prejudice and plain error goes ahead and allows reversal, even if the evidence is otherwise not what we would call closely balanced under the first prong. So your honors, for all those reasons, we would ask that this court reverse Mr. Martinez's for a new trial that would comport with basic constitutional guarantees. And I'll answer whatever questions your honors have. Questions? No, no questions. Ask one. So you counsel speak a good deal about the fact that defendant was not in the room during oral argument, but he wasn't outside the courtroom. There was some ability for someone to interrupt opening statements and to go into the courtroom and suggest to the judge, we can't hear. Um, well, your honor resolution, I mean, to a process to which the defendant had already agreed, by the way. Well, a couple of points on that, your honor. First of all, I'm not exactly sure how the defendant would have gone about doing that. He's in custody. There's a sheriff's deputy there. I don't believe that he could simply get up and walk out of the room where he's in and go inform somebody that this is going on. I don't, at least by my general understanding, that would not, that's not something that would be looked favorably upon by the sheriff's deputy. And it's probably not something that would be allowed. I would imagine. Um, so we certainly at least don't have any record indicating that that's possible. Second, um, your honor, as far as counsel's agreement here, uh, I would know, first of all, counsel did not say anything whatsoever about having Mr. Martinez sent out of the courtroom. He did not object, but he did not agree when it came to sending Mr. Martinez out of the courtroom for opening statements. And so that we would believe is forfeiture. It is not waiver or agreement. Uh, second, your honor, we would say that at the time that counsel is not, are not, um, objecting or what have you counsel does not have all the important information. Most importantly, the fact that counsel does not know that the defendant can't hear this. The whole idea here is that defendant is going to be able to watch and hear these opening statements from the other room. However, as it turns out, he could not, and nobody knows about that until after the fact. And so for that reason, your honors, we would say, even if it were possible to interpret something that happened, there is agreement. It is not agreement to a procedure in which Mr. Martinez is unable to hear what's happening. I am certainly am not going to take issue with your statement that defendant wasn't free to walk out of the room. Clearly he wasn't. But there was no, um, no, nothing precluded him from saying to the sheriff's officer, I can't hear. And then allowing the sheriff's officer who likely had a radio, uh, and who likely could think far enough in advance to know that he needed to get to someone in the courtroom. So that's not a question. Really. It really is just an observation. I have no, uh, well, your honor, as to that, I would note that the sheriff's deputy was deputy was present and could not hear. And the sheriff's deputy did not apparently, um, alert anyone to this because this all was occurring outside of the courtroom and without the court reporter present, we don't really know if Mr. Martinez may have said to the sheriff's deputy, Hey, I can't hear this. Can we do something about this? Uh, however, this was all happening out of the courtroom and off the record. So we have no information on that topic. He had, he had an intercom phone though, right? For his, to his attorney. Uh, yes, he had this, the intercom phone. Yes. So is there anything in the record that says he tried to alert his attorney by beeping the phone or using the record? It doesn't show one way or the other. Okay. So let's say you may go ahead. We can't hear you. Have you got your phone? I mean, you got your. I apologize. Your honors case of the analogy. Good morning, your honors. Assistant state's attorney Phyllis Warren on behalf of the people of the state of Illinois, your honors, the defendant here received a fair trial and his conviction for predatory criminal sexual assault and aggravated criminal sexual abuse of his seven-year-old daughter should be affirmed regarding the first issue. Viewing the opening statements via closed circuit TV. Defendant affirmatively waived review of this claim of error where he acquiesced to proceeding in such a manner. Acquiescence does not require only that the defendant make the request or verbal agreement by the defendant. As defendant suggests here, the defendant acquiesced by his conduct and his failure to object despite ample opportunity to do so. And he does deprive the trial court of the opportunity to address any of these concerns raised in his brief or that counsel raises that he claims now occurred. He denied the court the opportunity to remedy it or if necessary, have the defendant come into the courtroom. Proceeding in such a manner was entirely reasonable and there's nothing in the record to suggest the defendant was disturbed or troubled by it. And further, after his defense counsel was made aware that defendant could not hear only his defense counsel statement, there is no request to read the transcript back or to repeat the state's opening statement. This kind of clearly shows he acquiesced to proceeding in this manner. Acquiescence aside, your honors, the defendant here is not entitled to relief because there was no error. His right to be present was not violated where he viewed and heard the prosecutor's statement in via closed circuit TV. To say this constitutes error is putting form over substance. His physical absence from the courtroom during opening statements didn't result in a denial of an underlying substantial right or cause of proceeding to be unfair. His physical presence wouldn't have contributed to his opportunity to defend himself against these charges. There's no constitutional right to opening statements. Opening statements aren't evidence. They're statements by the attorneys, as your honors are well aware, advising the trier of fact of what the parties expect the evidence to show. His physical presence in the courtroom during these statements wouldn't have been useful or beneficial because it wouldn't have added anything to what the attorney expected the evidence to show. His right to be present was not implicated by his physical absence and this claim is as premise on defendant's incorrect assertion that defendant didn't hear the prosecutor's opening statement. Look, it is the defendant's burden to establish the facts and the record here does not establish that the defendant could not hear the prosecutor's opening statement. The record affirmatively establishes only the defendant could not hear defense counsel's statement, his own counsel statement, because counsel was not projecting or standing close enough to the microphone on the video camera. And before defendant exercised his right to testify, he did hear all the evidence. So he did have all the necessary information to allow him to intelligently exercise his right to testify or not. So no error occurred. Any possible error, your honors, did not rise to the level of plain error where the evidence of his guilt was overwhelming. Aside from the victim's testimony of the sexual assault perpetrated on her by her father, the defendant, the court also heard from Dally Martinez, her mom, the defendant's co-defendant, who testified how she observed, excuse me, she observed the defendant naked, lying on top of her daughter, and in her words, having sex with her. And in her signed statement, she admitted that on the defendant's phone, she observed three photos of the defendant's penis inside her daughter's mouth. The physical evidence corroborated the minor victim's testimony. His semen was found in his daughter's, seven-year-old daughter's underwear. The physical findings of her examination were consistent with the minor victim, excuse me, suffering sexual trauma. And he also gave signed statements in which he admitted to touching her vagina with his fingers and touching her penis, I'm sorry, touching, having her mouth touch his penis. Nor can he establish second-pronged error because the error here was not so serious, if there was error, the error was not so serious that it affected the fairness of his trial or challenged the integrity of the judicial process. Because as I said earlier, no underlying substantial right was not implicated and the fairness of his trial was not affected. At most, the record before this court merely establishes the defendant only failed to hear his own counsel's opening statement. Moving on to the second issue, defendant affirmatively waived his right to be present, excuse me, his right to be present by viewing the victim's testimony via closed circuit TV with the victim in the courtroom where he verbally agreed to proceeding in such a manner and the record clearly demonstrates it. The court explained that how it was going to proceed. The court asked defense counsel if that was satisfactory. Defense counsel said, yes, your honor. The court then explained to defendant, this is how we're going to proceed. You're going to be in the back room. Is that okay? Defendant responded, sure. Defendant was not disturbed or troubled by the manner in which the court proceeded in viewing the minor victim's testimony and his agreement deprived the trial court of any opportunity to address these claims that defendant now raises and claims existed and remedy them if required. Notwithstanding his acquiescence, your honors, he is not entitled to relief because no error occurred. While it's true that not all the provisions of the Child Shield Act were strictly followed as the victim's testimony occurred in the courtroom and defendant viewed it via closed circuit TV, there was no violation of his right to confront her. The victim testified under oath. She was subject to contemporaneous cross-examination and she testified under the watchful eyes of the parties in the fact finder. To say this constituted error, again, it's putting form over substance. His claim that his right to confrontation and assistance of counsel were infringed on because the sheriff's presence and the intercom didn't allow for confidential communication, completely meritless. First, it's his burden to affirmatively show that the intercom system didn't provide for confidential communication. The record doesn't bear that out. The prosecutor explained that it would be over the phone where he couldn't hear, the court couldn't hear what the defendant had to say. And the sheriff's presence in the room of the defendant looked at, as counsel acknowledged, defendant wasn't his custody. There's nothing in the record to establish that the defendant was doing anything more than providing security. And this is no different than when the sheriff, excuse me, stands behind the defendant in a jury trial. He still needs to talk in hushed tones and speak quietly. But the presence of his courtroom doesn't interfere with confidential communication with counsel. Any error, your honors, doesn't rise to the level of plain error given the overwhelming evidence of guilt as I spoke of earlier. Nor can he establish second-pronged plain error because this error was not so serious that it affected the fairness of the trial or challenged the integrity of the judicial process because his rights to confrontation and assistance of counsel were not implicated. So his fairness of the trial was not affected. At most, the record before the court establishes that the trial court complied with the Child's Shield Act in substance but not in form. Regarding the issue about section, excuse me, 115.11, again, your honor, he waived this by his conduct and his foregoing any objection despite ample opportunity to do so. In acquiescence aside, there was no error. The record demonstrates that the trial court was aware of the statutory requirements of section 115.11 and followed them. There was an off-the-record discussion. And after that off-the-record discussion, the trial court excluded two people from the courtroom but allowed a third person to stay during the minor victim's testimony. The record doesn't indicate that any member of the media was excluded. The record demonstrates that the court made implicit findings of who did or did not have a direct interest in the outcome of defendant's trial after inquiry and properly excluded two people who didn't have a direct interest in compliance with section 115.11. And as the reviewing court in Williams, which is akin to what happened here, noted, a trial court is presumed to know and follow the law unless the record affirmatively indicates otherwise. Nothing in the record indicates otherwise. The record indicates the court was aware of it in its exclusion of two people after an off-the-record conference and allowing a third person to remain. Defendant's reliance on Shoonover is completely misplaced. Unlike the defense counsel in Shoonover, here, trial counsel failed to identify anyone who had a potential interest in the outcome of his case. Further, after the people moved for partial closure, the parties had an off-the-record discussion where the court inquired about the interest of the spectators present. After that discussion, two were asked to leave and one was allowed to stay. No such discussion occurred in Shoonover, which the Shoonover court found resulted in exclusion of anyone other than the minor victim's family and constituted a violation of the statutory requirements. Additionally, the Shoonover court explicitly said, look, what happened here in the Shoonover case is different than what happened in Williams. And what happened here in our case is akin to what happened in Williams. Clearly, Shoonover is distinguished. Assuming, arguendo, that the statutory requirements of 115.11 were not met, the partial closure of the court didn't constitute clear or obvious error because defendant was not deprived of a Sixth Amendment right to a public trial. It was a partial, limited closure done to protect the minor victim's interest and it was no broader than necessary as the courtroom was only closed during her testimony and only those who did not have a direct interest in the case. The closure didn't call into question the confidence of the public in the integrity and impartiality of the system. There's no assertion that the minor victim lied or the prosecutor or trial court or trial judge committed misconduct. And a complete record was made of the testimony that was taken during the closure. All the protections conferred by the public trial guarantee were met. And recently, your honors, in People v. Radford, the Illinois Supreme Court recently declined to apply the Waller test, which would entitle the defendant to a new automatic reversal to a partial closure of a courtroom where the defendant failed to object. And it's for the very same reasons that the defendant is making now. By failing to object at trial, defendant doesn't allow for the opportunity for the judge to develop an alternative plan to a partial closure or explain in greater detail for the justification of it. The court in Radford noted the need to lodge a contemporaneous objection to a courtroom closure also prevents the defendant from potentially remaining silent about a possible error and waiting to raise the issue, seeking automatic reversal only if the case does not conclude in his favor, as he, as defendant is attempting to do here. This court to found the reasoning in Radford and determined that the partial closure didn't constitute clear and obvious error depriving the defendant of a Sixth Amendment right to public trial. Moving on to the third issue, the third issue in defendant's brief, your honors, the properly admitted VSI video. Look, defendant had ample opportunity to tell the court, I do not want to proceed in this manner. I want this video to be seen in open court. Four more witnesses testified after the video, the proper foundation was laid through the forensic investigator. The case was continued on a separate day. And at that point in time, defendant didn't say, hey, I want your honor to view this in court. Instead, he said, yes, I viewed it. I saw it just so the record's clear. Nothing in the record demonstrates defendant was disturbed or troubled by proceeding in this manner. And had he expressed any of these concerns, the trial court could have remedied them or addressed them. He clearly waived this issue. And acquiescence aside, no error occurred because his right to be present was not violated. His presence during the trial court's viewing of the video would have been useless or but a shadow. It wouldn't have contributed to his opportunity to defend himself against the charges where he had no objection to the court viewing the video outside his presence. He saw the video himself. The forensic interviewer who conducted the VSI testified both during the 11510 hearing and at trial and defendant had the opportunity to cross-examine him and confront him. The victim also testified in court and the defendant had the opportunity to cross-examine her and confront her. And where the defendant was aware of all the people's evidence before he decided to testify in his own defense. As this court in Groby found, there's no violation of defendant's right to be present, whereas underlying right to confrontation was not violated, nor the fairness of his bench trial impacted by the court viewing the VSI video outside of his presence. There's nothing to suggest that the trial court procedure prejudiced the defendant or, excuse me, prejudiced the defendant's ability to aid in his defense or decide whether to testify. The sheriff's presence in the room when defendant viewed the video, an issue the defendant had raised in his brief, that doesn't implicate his ability to aid in his defense. The sheriff was there to provide security. Counsel alluded to knowing what the trial court's reaction was. Look, there's a constitutional right to know what the evidence is against him, but there's not a constitutional right to the prior facts, deliberations, or considerations about that evidence. And you got to wrap it up. You're running. You've been going for almost 20 minutes. I apologize, your honor. If I could just distinguish Lucas and then I'll address the right to public trial. I think you're going to have to wrap it up. Your honors, Lucas is distinguishable. The record shows defendant knew the VSI video, what the contents were. The VSI video wasn't a significant portion of the evidence in Lucas, where the trial court explicitly relied on the video and its findings. And here, the VSI video did not depict the defendant's conduct as the video in Lucas did, but the minor victim statements, both of whom testified at trial and the defendant had the opportunity to confront him. Your honor, regarding the, your honors, regarding his right to public trial, Groby's dispositive on this issue. There's no closure of the courtroom or exclusion of public. The foundation of the VSI video was properly laid in open court. The video was proffered into evidence. Your honor, there's, there were no cumulative error. I'm going to wrap this up respectfully. I apologize for going over, but it is for these reasons. And the reason stated in the brief that we believe the defendant here received a fair trial in this court should affirm his convictions. There's no cumulative error here. He was not denied a fair trial. Questions. No, I have none. All right. You may do your closing. Yeah, sure. Your honor. Thank you very much to address a few points there. And there is, there's a fair bit to address, but just to get to a few, a few specifics. First of all, the claim that opening statements are not required is largely irrelevant. The mere fact that you can hold a criminal trial without opening statements does not mean that an opening statement is not a critical part of the proceedings. When you do hold one, you can waive a jury trial, but jury selection is still a critical portion of a defendant's trial. And therefore it is something that the defendant has a right to be present for. And that's something that I'd like to point out in sort of a broad manner with a number of the arguments made here today is that there seems to be this assumption that actually Mr. Martinez does not have the right to be present unless he can absolutely show that he must be there at all times. The presumption, the constitutional presumption is that Mr. Martinez is present for all of his trial. That is always the assumption, just as the assumption is that he will have a public trial. This is the baseline. And we actually indulge every presumption against the waiver of constitutional rights, such as the right to a public trial. Uh, to that point, I would also know when we talk about this issue of waiver and forfeiture, this is a literal matter of black letter law. The failure to object to an error is forfeiture. That means that you must raise an error, either via ineffective assistance of counsel or plain error. Waiver requires something more. The state here would basically have waiver and forfeiture become one. So that any time a defendant fails to object to an error, well, they've acquiesced in it. They could have objected. They didn't. So now they've acquiesced and now we can't raise it at all on appeal. And that's particularly unjust in this case, your honors, where we have circumstances where, for example, when the courtroom closure is taking place, Mr. Martinez wasn't even there. Mr. Martinez, presumably one would assume this camera is pointed towards, you know, the witness stand since that's where the witnesses are going to be. Mr. Martinez can't see who these people are in the gallery that the judge is talking to. Mr. Martinez has no idea what's going on. And Mr. Martinez is a member of the family, is one of the only people present who might know if these are people who have some direct interest in the proceedings. He might be able to say, hey, attorney, object to this. That person has a right to be here. I want them here. But he's not there. And he's not there because the court sent him out of there. And they sent him out of there for no reason because they could have just filed this. They could have just followed the statute. Um, I apologize. One moment. Um, there is this repeated discussion of why the deputy was in the room. Why was the deputy in the room? Why the deputy was in the room is not especially relevant. The question is the effect that the deputy's presence had on the proceedings in this case. And the effect that that had Mr. Martinez's ability to communicate confidentially with his attorney. Moreover, counsel is incorrect that this is in some way analogous to having a sheriff's during the trial. First of all, it's not analogous because two people who are sitting next to one another have many different ways in which they can try to communicate confidentially. Whereas someone who is sitting in a room with nothing but an intercom has only one option. And that is to speak and to speak loudly enough that it can be heard through the intercom. Furthermore, there is a reason a security related justification why we sometimes have to have a sheriff's deputy stand directly behind counsel table. Usually because the defendant has been disruptive and they present a risk. In this case, Mr. Martinez has never been disruptive in any fashion. He's not accused of a violent offense. There is no indication that there is any security related reason why the deputy couldn't have simply stood outside the room at the locked door or could have stood at least at a sufficient distance away that Mr. Martinez could have communicated confidentially with his attorney. And as related to several of these matters, the state has gone to a great deal of effort to make this record appear ambiguous. They say that the record shows that he only didn't hear his defense attorney statement. That is not what literally happened. The court asked the question, did he hear the arguments? And the answer was no. Now, your honors, if that does not show that he did not hear the arguments, it's difficult to imagine exactly what would. However, regardless, again, the state claims there's some ambiguity about what's happening. There is not. This record is not perfect. It is not perfect because the court kept holding proceedings off the record and kept sending Mr. Martinez out of the room. So we don't have record of some of what happened there, but that was due to the error in and of itself. What the record is sufficient to show is that Mr. Martinez was not physically present for portions of his trial. Mr. Martinez was not able to communicate confidentially with his attorney. And that is all the record really needs to show to establish constitutional error here. And so wrap it up. Yes, your honors. So for all of these reasons, and for all of the reasons we've cited in our briefs, we would ask that this court go ahead and reverse Mr. Martinez's convictions and remain this case so that he can have a new trial with appropriate constitutional safeguards. Any questions? None. All right. Thank you very much. I realize it's difficult when you're doing it this way to control your time limits, but I have to try and be fair to both of you. So it's somewhat the same amount of time. So you got all your points in and the briefs were actually very interesting. So I thank you for your time and effort. And we'll let you know as soon as we figure out what we're doing. Thank you.